[Hall v. The State.]

# Hall *v.* The State.

## *Indictment for Seduction.*

1.  *Organization of grand jury; when no illegality shown.*—In the organization of a grand jury, where the record discloses that the number drawn to serve on said grand jury was eighteen, and that only fifteen of said number appeared, and that by reason of an excuse allowed by the court, one other was not required to serve, reducing the number to fourteen, and thereupon the court ordered six persons to be summoned, and the record recites that three named persons "were elected to serve as grand jurors," it can not be said that such grand jury was illegally organized.

2.  *Pleas in abatement; sufficiency thereof.*—In a criminal case, a plea in abatement to the indictment, which avers that while the grand jury which preferred said indictment was engaged in the examination and investigation of the pending case, the solicitor of the court expressed to them the opinion that the evidence before them was sufficient to warrant them in finding an indictment, and that it was their duty to indict the defendant, and that this influenced the grand jury, without which no indictment would have been preferred, and further, that while said grand jury was in session and so engaged in the investigation of said case, the judge of the court, at the request of the grand jury, appeared before them and advised them as to the law relating to the offense with which the defendant was charged; is insufficient and subject to demurrer; the matters averred therein not being proper subjects for plea in abatement.

3.  *Indictment; motion to quash.*—A motion to quash an indictment, upon the ground that the solicitor of the circuit court consulted and advised the grand jury while examining and investigating the case against the defendant, to return an indictment against him, and that the judge of the court pending such investigation appeared before the grand jury at their request and instructed the grand jury as to the law relating to the offense with which the defendant was charged, is properly overruled, it not being competent for the grand jurors or any person conversant with the facts to disclose or testify as to what transpired in the grand jury room pending an examination and in-

[Hall v. The State.]

vestigation of the crime alleged to have been committed.

4. *Seduction; plea of autre fois acquit, under an indictment for rape no bar.*—On a trial under an indictment for seduction, a plea which sets up former acquittal of the defendant under an indictment for rape, which charged rape upon the same girl whom he is charged with having seduced, and further averring that there was only one act of illicit intercourse between the girl and the defendant, and that act was involved in the charge of rape upon which he was tried and convicted, and that the same act is involved in the charge of seduction for which he was arraigned in the present case, is insufficient as a bar to the further prosecution of the defendant under the indictment for seduction.

5. *Seduction; admissibility of defendant's testimony upon a former trial for rape.*—On a trial under an indictment for seduction, the stenographic report of the defendant's testimony upon his examination as a witness in his own behalf, on a trial under an indictment charging him with rape, in which the same act upon the same girl was involved as is involved in the present case, is admissible in evidence, if the *corpus delicti* is otherwise shown; and it is no objection to the introduction of such testimony that the confessions and admissions made by the defendant were not voluntary.

6. *Seduction; proof of corpus delicti.*—The *corpus delicti* may be shown by circumstances; and on a trial under an indictment for seduction, where the defendant admits in open court that he had intercourse with the girl, who had just arrived at the age of puberty, that the defendant at the time was her teacher and by persuasive insinuations represented to her, while fondling her, that he would be true to her and would not betray her, when taken in connection with the innocence and ignorance of the girl as to the illicit relation, the question of the proof of the *corpus delicti* is one for the jury; and such facts sufficiently establish the *corpus delicti* to authorize the admission of the defendant's testimony upon the former trial under an indictment for rape, involving the same act with the same girl.

7. *Seduction; charge of court as to temptation.*—On a trial under an indictment for seduction, a charge which assumes that any word or act done by the defendant for the purpose of enticing the girl to the doing of the act complained of, amounts to a temptation, is invasive of the province of the jury, and is properly refused; since whether such act or word did or did not, is a question for the jury.

8. *Charge of court upon the effect of the evidence properly refused.*—A charge of the court upon the effect of the evidence

is invasive of the province of the jury and is properly refused.

9. *Seduction; charge of court to jury.*—On a trial under an indictment for seduction, where the charge given by the court *ex mero motu* involves the suggestion to the jury that the judge thought that certain acts of the defendant were done for the purpose of giving him an opportunity to excite in the girl, upon whom the crime was committed, evil thoughts, is erroneous and properly refused.

10. *Same; same.*—On a trial under an indictment for seduction, a charge is erroneous which instructs the jury that "If the woman is examined as a witness and the testimony outside of hers and independent of hers is sufficient to establish the defendant's guilt, then you may convict on such other testimony."

11. *Seduction; charge as to reasonable doubt; when properly refused.*—On a trial under an indictment for seduction, a charge requested by the defendant is erroueous and properly refused which instructs the jury that "unless the evidence shows beyond a reasonable doubt that Pearl Pritchett [the girl alleged to have been seduced] consented and entered into the sexual act voluntarily, the defendant can not be convicted."

APPEAL from the Circuit Court of Marshall.

Tried bfeore the Hon. J. A. BILBRO.

The appellant Beauregard C. Hall, was indicted, tried and convicted for the seduction of Pearl Pritchett, and was sentenced to the penitentiary for ten years.  It is insisted on this appeal that the grand jury which found the bill was illegally organized.  The facts relating to the organization of the grand jury are sufficiently stated in the opinion.  The defendant moved the court to quash the indictment upon the following grounds: "1.  Because twelve grand jurors did not concur in finding the bill. 2.  Because the presiding judge of the court pending the investigation of this charge before the grand jury and while the grand jury was sitting as a body and while it was actually engaged in the investigation of this charge entered the grand jury room and then and there charged the grand jury concerning the law of this case. 3.  Because the solicitor of this court counselled and advised the grand jury while sitting as a body and while the investigation of this case was

[Hall v. The State.]

pending before them, to return an indictment against
the defendant for seduction.   4. That while the grand
jury was engaged in the examination and investigation
of this case a ballot was taken by the grand jury as to
whether or not they would return a bill, that the grand
jury refused to find a bill, that in a few minutes there-
after the solicitor was informed by the grand jury that
they refused to find a bill, that the solcitor did then and
there censure the grand jury for refusing to find a bill,
that the solicitor continued thereafter to urge the grand
jury to find an bill and that thereafter the grand jury
acting under these influences did find the indictment
in this case.   5. Because the solicitor for this circuit
induced the grand jury to find the bill against the de-
fendant against their wish by rebuking them because
they failed to find a bill.   The grand jury voted on the
case four times and refused to find a bill and each time
the question was brought before them by the request of
the solicitor for further consideration, and that each
time he, by words and acts, showed his displeasure at
their failure to find a bill on the evidence before them,
and censured them by severe rebukes for their failure
to find the bill.   And at the solicitor's suggestion the
presiding judge of this court was invited by the grand
jury before them to discuss the law and to give his
opinion of the law, on the facts of this case and by his
method the grand jury was induced to find a bill on the
fifth ballot, otherwise they would not have found one at
all against the defendant in this case."

On the hearing of this motion the defendant intro-
duced two of the grand jurors who were present on
the grand jury which preferred the indictment and they
testified that when the cause against the defendant was
before the grand jury and was being considered by them,
on the question as to whether or not they should re-
turn an indictment against him for seduction, there
was a vote taken, and only ten persons voted in favor of
preferring an indictment against the defendant; that
the solicitor was not in the grand jury room when this
vote was taken, that when he returned to the grand jury
room, and was told of the failure to find an indictment,
he showed his displeasure and insisted on their consid-

[Hall v. The State.]

ering the case again. A second vote was subsequently
taken on the question and only 11 of the grand jurors
voted for the indictment. This vote was taken while
the solicitor was out of the room, and when he returned
and was told of the failure to prefer the indictment, he
became very angry and remonstrated with the grand
jury and insisted that the facts of the case justified the
finding of the indictment gainst the defendant. That
upon the request of the grand jury, the judge who was
then presiding at the Circuit Court, was requested to
come before them, and to give them instruction as to
the law relating to seduction; that this was done, the
judge appearing before them in the grand jury room,
and instructed them as to the law relative to seduction;
that upon another vote being taken, 12 of the jurors voted
in favor of preferring an indictment against the de-
fendant, and then the indictment was preferred. Upon
the hearing of the facts the court overruled the mo-
tion to quash the indictment, and the defendant duly
excepted.

The defendant then filed the following pleas in
abatement: "Comes the defendant and pleads in abate-
ment to the indictment: 1. That while the grand jury
was engaged in this term of the court in the examina-
tion and investigation of this case, the solicitor of this
court did, while the grand jury was in session and con-
sidering the case, express the opinion that the evidence
before them was sufficient to warrant them in finding
an indictment, and their duty required them to find a
bill on said evidence, and that he could convict the de-
fendant on the evidence they had before them, and that
this influenced the action of the grand jury, and with-
out this influence the grand jury would not have found
the bill. 2. That while the grand jury was at this term of
the court examining and considering this case against the
defendant the judge of this court at the request of the
grand jury did come before the grand jury while it was
in session and did then and there advise them concern-
ing the law of seduction, the said judge having knowl-
edge at the time that the grand jury was considering
this case."

To the first of these pleas the State demurred upon the following grounds: "The expressing by the solicitor to the grand jury was neither unlawful nor improper. 2. That the opinion of the solicitor as expressed to the grand jury, as averred in said plea, was not such an act as is unlawful or improper for the solicitor to do before the grand jury. 3. That the opinion of said solicitor, if expressed as averred in said plea, shows no reason why said indictment should be quashed.

To the second plea in abatement, the State demurred upon the ground that it is neither illegal or improper for the judge of the said court, at the request of the grand jury, to appear before said grand jury in their room, and there instruct them as to the law of crimes, or as to any particular or alleged offense being considered by them. This demurrer was sustained, and to this ruling the defendant duly excepted.

The defendant then filed the following plea of *autre fois acquit*: "1. That on February 12, 1901, defendant committed one and only one sexual intercourse with the said Pearl Pritchett and that he never at ony other time committed an act of sexual intercourse with her; that the single act named was committed in this county, that on April 10, 1901, the grand jury of this county returned an indictment in words and figures as follows:" (then follows an indctment against the defendant for rape on Pearl Prickett.) It was then averred in said plea that on April 22, 1902, defendant was placed on trial under said indictment in the Circuit court of Marshall county unpon his plea of not guilty; and that on said trial the State offered evidence showing said act of sexual intercourse committed on the occasion above referred to and that said act was committed with said Pearl Pritchett in this county and at the time and place above named, and that said act was committed by this defendant forcibly and against the consent of the said Pearl Pritchett and thereupon the State rested; that defendant then introduced testimony on said trial tending to show that defendant did commit said act of sexual intercourse with said Pearl Pritchett, but that the same was done with her consent, that the trial proceeded until the 24th day of April, 1901,

when the jury returned into open court a verdict that the defendant was not guilty of rape. And thereupon it was adjudged by this court that the defendant was not guilty of the charge of rape." There was then set out in said plea the judgment of the court finding the defendant not guilty of the charge of rape, and the plea then continues as follows· "Defendant further avers that he is the same identical Beauregard C. Hall mentioned in the above indictment for rape, and the Pearl Pritchett mentioned in this indictment is the same identical Pearl Pritchett mentioned in the above indictment for rape, and that the act of sexual intercourse in the above indictment for rape and for which defendant was tried at the last spring term of this court is the same identical act of sexual intercourse charged in this indictment and this plea defendant is ready to verify."

To this plea of former acquittal the State demurred upon the following grounds: 1. That said plea shows upon its face that the offense in the former indictment set out in said plea, and the one charged under the present indictment are not the same. 2. That the indictment for rape and the trial and acquittal therefor is not a bar to the trial for seduction. 3. That the plea shows on its face that the defendant could not under the said former indictment have been convicted of the offense of seduction; said offense not being in any way included in said indictment. 4. That said plea shows on its face that the defendant has never been in any way put upon trial for seduction , nor has he in any way been put in jeopardy under the charge of seduction. 5. That the evidence which will sustain an indictment for seduction would not authorize a conviction for rape. The demurrer was sustained, and the defendant duly excepted.

On the trial of the case, Pearl Pritchett, who it was admitted was an unmarried woman and at the time of the offense committed upon her was 14 or 15 years old, was introduced as a witness, and she testified at the time of the commission of the offense for which the defendant was being prosecuted, he was a school teacher and she was going to school to him, and had been going to school to him for nearly three months, that on the

day of the occurrence her class was working examples in Arithmetic and the defendant told the class that they were coming to an example that he did not expect any of the class could work, and that he would work it for the class; that she then said she would get the defendant to work it for her at dinner time; that she was out at play at recess when the defendant sent for her to come in and let him work the example for her; that she continued to play and did not go to the school room as requested by the defendant; that later in the day, at the evening recess, the defendant came out and called her into the school house and said he would work the example for her; that he went in and he told her to set the examples down on her slate and then began to talk to her. Continuing said witness Pearl Pritchett testified as follows: "He began to talk and asked me who I took to be my friend and asked me if I didn't take him. He took hold of my right hand and said he would never tell on me. He turned round and said he would give me his right hand that he would never tell it on me. He told me to go down into the woods where they had been cutting saw logs, and when I got down there he was there. He took hold of me and throwed me down. He throwed me down and unfastened my clothes and got down on top of me and hurt me. I tried to get loose but could not. He did not say anything to me while down there. After he helped me up and brushed off the leaves, I went back to the school house. I went on the play ground and when I went in the house he was in there. I staid and studied until school was out, after which I went home. He said nothing to me about his being a married man. He said nothing to me about trusting him. Nothing that way. I was not very long there in the school house with him. While down there in the thicket Mr. Hall put his private parts in mine. When I went down there in the woods Mr. Hall said he would choke me if I hollowed, and I so testified at the other trial. That is what I testified before and it is correct. He made me go down there in the woods. I so testified at the other trial, and it is correct. And when I got down there he throwed me down

and told me if I hollowed he would choke me. He put his hands around my throat and took hold of me and throwed me down. He told me if I hollowed he would choke me and he had hold of my throat and did choke me. I was not willing for him to do what he did. I never did agree for him to do what he did. He made me. It was against my consent. Before going down there and what he did after I got down there was against my will."

One J. A. Counts was called as a witness for the State and testified that he was present at the spring term of the Circuit court of Marshall county during the trial of the State v. Beuregard C. Hall under a charge of rape, alleged to have been committed on Pearl Pritchett; that during that time he took down the testimony in shorthand of Mr. Hall, who was examined as a witness; and he afterwards transcribed his stenographic notes on the typewriter. Upon being shown a paper, he testified that he recognized said paper as a copy made by him from his stenographic notes of the testimony of Hall upon his trial under the indictment for rape; that said copy was substantially what Hall testified to on that trial. It was shown by the examination of counsel for defendant that said Hall, the defendant in the case under the indictment for rape, voluntarily went upon the stand as a witnes in his own behalf.

The State then offered the copy of the stenographic notes transcribed by said witness Counts in evidence. The defendant objected to this admission in evidence, upon the following grounds: "1st. Because a *substantially correct* copy of what the defendant said on that trial is not admissible. 2d. Because it is a copy from shorthand notes and is secondary evidence. 3d. Because not shown to have been made under such circumstances as authorizes its use for the purpose of refreshing the memory of the witness as a memorandum. 4th. Because there is not sufficient proof of the *corpus delicti* of the offense charged in the indictment. 5th. Because the statement was not voluntarily made within the meaning of the law. 6th. Because that statement was made by the defendant under an indictment for

rape, and when he was being tried for his life and the statement was made under the pressure of that prosecution." The court overruled the objection of the defendant, permitted said testimony of the witness Hall, in the former case in the trial of the indictment for rape to be introduced in evidence, and to this ruling the defendant duly excepted.

In the testimony of the witness Hall, so introduced in evidence, he stated that act of intercourse between him and Pearl Pritchett was by her consent and was not caused by any force or threats on his part.

The court at the request of the defendant reduced his charge to the jury in writing, and the defendant separately excepted to the following portions of said charge: (dd.) "If words are spoken or an act is done by the man for the purpose of enticing the woman to the deed and by means of such temptation thus presented and in consequence thereof she yields to sexual intercourse with him it is seduction." (ff.) "You may accept or reject all or any part of the evidence of any witness in the case according as you may believe the same to be just and right under the evidence before you." (gg.) "The evidence given in by the defendant shows that the beginning of the matter which lead to the act was that she came to the school room, that on a Monday Pearl came back to school from dinner earlier than usual; that he defendant was sitting by the stove and spoke to her about her early return, that she replied that dinner was not ready, that her sister tried to get her to stay, that she would not do it, but took a few bites and came back, that she then said something about a boy, Burr Burgett having left where she was living and gone home, and that she did not care whether he ever came back or not, a boy that would do like he had done. Defendant asked her what did he do. Pearl said 'the night Ada got married, I think he eavesdropped the house,' that defendant asked 'what made you think that, where could he have got to eacesdrop the house,' that she replied under the floor. That she then said 'a boy that will do that will tell on the rest of us girls, and I don't care if he never comes back and I am in hopes he wont.' That she then went to play.

[Hall v. The State.]

If this, as 'defendant says, was the beginning of the matter, it may aid you in your investigation, to pause just here and inquire whether in this conversation the defendant thought he saw in the girl sexual tendencies, and whether there was then aroused in him lustful desires toward her. What was the mind of the defendant toward her. What was the mind of the defendant toward the girl? What motive or purpose, if any, was found after this alleged conversation with her? This is a material inquiry, for in temptation or deception or arts there is a motive to an end, there is a purpose to carnally know the woman. If it be true that the defendant on this occasion had his passions appealed to in such sort that he intended to take advantage of an opportunity if offered to have intercourse with her, then there is established one element of temptation, or of art or of deception." (jj.) "If it be true that the defendant on this occasion had his passions appealed to in such sort that he intended to take advantage of an opportunity if offered to have intercourse with her then there is established one element of temptation or of art or of deception." (kk.) "Did he or not agree to work the example for Pearl at 12 o'clock in order that he might have her alone in his presence to dally with her and incite in her thoughts of evil." (ll.) "Was the matter of having her come to him at 12 o'clock a subterfuge adopted by which he could make way for a gratification of his lustful desire if he had such desire." (mm.) "And when according to defendant's statement, the girl went out to play and he called her back, was his motive in calling her back to have the opportunity of leading the girl on to a consummation of his purpose, if he had any purpose of wrong toward her." (qq.) "If the woman is examined as a witness and the testimony outside of hers and independent of hers is sufficient to establish the defendant's guilt, then you may convict on such other testimony."

The court at the request of the State, gave to the jury the following written charges: (A.) "It is not a mere doubt that authorizes an acquittal, the doubt which authorizes an acquittal, the doubt which authorizes an

(B.) "It is not an imaginary or possible doubt that au-
thorizes an acquittal, the doubt which authorizes an
acquittal must be a reasonable doubt." (C.) "The court
charges the jury that it is a conceded fact or an admit-
ted fact that the defendant had sexual intercourse with
Pearl Pritchett." (D.) "The court charges the jury that
in this case it is admitted by the defendant that the
woman Pearl Pritchett was at the time of the act in
this case an unmarried woman." (E.) "The court
charges the jury that if they believe the evidence be-
yond a reasonable doubt they will find that the defend-
ant had sexual intercourse with Pearl Pritchett." (F.)
"If the jury believe the evidence beyond a reasonable
doubt, they will find that at the time of the alleged sex-
ual intercourse with the defendant she was a chaste wo-
man." (G.) "The court charges the jury that if they
believe beyond all reasonable doubt from the evidence
that within three years before the finding of this in-
dictment the defendant, by means of either temptations,
arts, deceptions, or flattery, seduced Pearl Pritchett in
this county, that said Pearl Pritchett was then an un-
married woman, and that she was then a chaste woman,
the jury must find the defendant guilty." (H.) "The
court charges the jury that if they believe beyond all
reasonable doubt from the evidence, that in three years
before the finding of this indictment, the defendant by
means of temptations, seduced Pearl Pritchett in this
county, that said Pearl Pritchett was then an unmarried
woman, and that she was then a chaste woman, the jury
must find the defendant guilty." (I.) "The court
charges the jury that if they believe from the evi-
dence beyond a reasonable doubt that within three
years before the finding of this indictment the defend-
ant, by means of arts, seduced Pearl Pritchett in this
county, that said Pearl Pritchett was then an unmar-
ried woman, and that she was then a chaste woman, the
jury must find the defendant guilty." (J.) "The court
charges the jury that it is the law that in considering
and weighing the evidence in this case, that after a con-
sideration of all the evidence, they may accept that part
which they believe to be true and discard that which
they believe to be untrue." (K.) "It is the law that

considering and weighing the evidence of any witness in the case you would be authorized to accept any part of such evidence which you believe to be true and discard that which you believe to be untrue."

The defendant separtely excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by him: (1.) "The court charges the jury that the evidence which will warrant a conviction must be so strong and cogent that the mind of a reasonable and guarded man, can entertain no reasonable doubt that he is guilty of the identical offense charged in the indictment." (2.) "Gentlemen of the jury, the arts, deception, flattery, or temptation which is necessary to constitute seduction in law must near the relation of cause to effect, and unless they tended to cause the sexual act the defendant would not be guilty, even though he may have been guilty of arts, flattery, temptation or deception, as to some details connected with the sexual act." (3.) "The court charges the jury that to authorize a conviction for seduction the evidence must show beyond all reasonable doubt the employment by the defendant of arts, deception, temptation or flattery with the intent and purpose at the time to induce Pearl Pritchett to have sexual intercourse with him, and not only this must be shown beyond all reasonable doubt but it must be shown that one or more of these means was the cause of her engaging in the act, but proof of the employment of one of these means followed by the commission of the act does not necessarily make out the offense." (4.) "Gentlemen of the jury, if Pearl Pritchett was induced by her own sexual passion to enter into the act of sexual intercourse with the defendant, then your verdict must be for the defendant." (5.) "Gentlemen of the jury, it is your duty to ascertain from the evidence what induced Pearl Pritchett to enter into the act of sexual intercourse with the defendant, and if you are not able to say beyond all reasonable doubt that she (Pearl Pritchett) did not yield to the embrace of the defendant on account of her own sexual passion, you must find the defendant not guilty."

(6.) "It is essential in order to constitute the crime of seduction that the woman must be induced to surrender her chastity by the deception, temptation, arts or flattery of the man; and if she engaged in the act on account of the promptings of her own sexual appetite, then it is not seduction, and if such be this case your verdict must be not guilty." (7.) "If the jury believe from the evidence that the defendant took Pearl Pritchett by the hand at the school house, and met her in the woods as disclosed by the evidence, and there felt her breast and had intercourse with her. If by reason of these things she entered into the sexual act because her passions were aroused and not because of any deception or temptations, arts or flattery of defendant, the verdict of the jury should be for the defendant." (8.) "The court charges the jury that if the said Pearl Pritchett engaged in the act of sexual intercourse from a prompting of her own carnal appetite, then the fact that the defendant did not dissuade her, or that he encouraged her in the desire, would not constitute seduction, and if such be the facts of this case, your verdict should be not guilty." (9.) "The court charges the jury that if the evidence of Pearl Pritchett is true, you must find the defendant not guilty." (10.) "If the jury are reasonably satisfied from the evidence that the testimony of Pearl Pritchett is true, then they should find the defendant not guilty." (11.) "If the jury believe the testimony of Pearl Pritchett, they must find the defendant not guilty, and if they believe her testimony they must find him not guilty." (12.) "The court charges the jury that unless the evidence shows beyond a reasonable doubt that Pearl Pritchett consented and entered into the sexual act voluntarily, the defendant can not be convicted." (13.) "Before you can convict the defendant, you must believe beyond all reasonable doubt that Pearl Pritchett's statement 'that she did not consent' is false." (14.) "If the jury believe from the evidence that Pearl Pritchett's statement is true in this particular 'that she never consented to the sexual act with Hall and that she was unwilling to it,' then the jury should find the defendant not guilty in this case." (15.) "The jury are bound to believe

[Hall v. The State.]

that the testimony of Pearl Pritchett 'that the sexual act was without her consent and against her will,' is false, before they can convict the defendant, for without consent there can be no seduction." (16.) "If the evidence of consent and dissent on the part of Pearl Pritchett is equally balanced, you must find the defendant not guilty." (17.) "The court charges the jury that if the testimony tending to show consent on the part of Pearl Pritchett, and that tending to show dissent on her part to the sexual act are equally balanced so that you cannot say beyond all reasonable doubt which is true, you must find the defendant not guilty." (18.) "The court charges the jury that the fact, if it be a fact, that Pearl Pritchett entered into the act of sexual intercourse reluctantly would not make or have any tendency to make a case of seduction." (19.) "If the jury believe the evidence, they should find the defendant not guilty." (20.) "The court charges the jury that there is no evidence that defendant employed deception in order to acomplish his desire of having sexual intercourse with Pearl Pritchett." (21.) "The court charges the jury that there is no evidence that the defendant employed any temptation in order to accomplish his desire to have sexual intercourse with Pearl Pritchett." (22.) "The court charges the jury that there is no evidence that defendant employed any arts in order to accomplish his desire to have sexual intercourse with Pearl Pritchett." (23.) "The court charges the jury that there is no evidence that the defendant employed any flattery in order to accomplish his desire to have sexual intercourse with Pearl Pritchett." (24.) "The court charges the jury that the statement made by the defendant on the trial for rape, does not tend to show the employment by defendant of temptation, deception, arts or flattery." (25.) "The court charges the jury that if Hall's testimony on the rape trial is true, then you will find the defendant not guilty." (26.) "The court charges the jury that there is no evidence in this case that defendant did or contemplated anything wrong during the conversation on the day before the commission of the act of sexual intercourse." (27.)

"The court charges the jury that there is no evidence that the defendant entertained any purpose of having sexual intercourse with Pearl Pritchett at the time he called her in saying that he would work the example for her." (28.) "The court charges the jury that there is no sufficient corroboration of the testimony of Pearl Pritchett within the meaning of the statute that will warrant a conviction." (29.) "The court charges the jury that the State by putting Pearl Pritchett on the stand vouched for her credibility, and it can not be heard to say that her testimony is not to be believed." (30.) "The court charges the jury that when the State put Pearl Pritchett on the stand they vouched for her veracity, and they can not be heard to say that she has made a willfully false statement as to any fact." (31.) "Sexual intercourse is not necessarily either rape or seduction, and because a jury has heretofore acquitted the defendant of rape, does not have any tendency whatever to show that the act was seduction." (32.) "The court charges the jury that the accusation of seduction is one easily made, hard to be proven, and harder to be defended by the party accused, though ever so innocent." (33.) "The court charges the jury that if defendant took hold of Pearl Pritchett's hand and asked her if she was willing to enjoy the act of sexual intercourse with him, this would not without more be the employment of arts, temptation, deception or flattery." (34.) "The court charges the jury that taking Pearl Pritchett by the hand and telling her that he would not tell if she would submit to his embrace, would not be the employment of deception, temptation, arts or flattery." (35.) "The court charges the jury that if the defendant called the said Pearl Pritchett into the school house under the pretense of working an example for her, but if his real purpose was to have sexual intercourse with her, this would not be the employment of deception within the meaning of the statute of seduction." (36.) "The taking of Pearl by the hand is not such temptation as would constitute cohabitation which followed soon after seduction, this is not the temptation which the law contemplates in a criminal act." (37.) "The court charges the jury that telling Pearl

[Hall v. The State.]

Pritchett to go down in the woods is not deception within the meaning of the statute on seduction and this would be true, even if she did not understand what he wanted her to go down in the woods for." (38.) "The court charges the jury that if defendant did say to Pearl Pritchett that he would never tell it if she had sexual intercourse with him, this would not constitute temptation, deception, arts, or flattery within the meaning of the statute." (39.) "The court charges the jury that if the said Pearl Pritchett gave her consent to have sexual intercourse with the defendant before she left the school house, then his laying his hand on her breast down in the woods would not constitute temptation within the meaning of the law."

J. E. BROWN and STREET & ISBELL, for appellant. The court has no right to appear before the grand jury and instruct them privately. The law has confided this duty to another official, who, when he acts in the premises, does so under the sanction of an official oath. Code (1896), § 5045. It is made no part of the duty of the judge to attend upon the grand jury in their room, and there instruct them concerning the law of cases they are investigating; and which may shortly come before him for trial. For this reason, as well as others, it is manifestly improper for him to do so. To state other reasons: If his charge to the grand jury can, under any circumstances, be excepted to (see *Clair v. State*, 40 Neb. 534), then, of course, it must be public in order that the defendant may know what the instructions are. If, on the other hand, it can not be excepted to, (see 66 Ala. 457), then for even stronger reasons it should be public that the corrective influence of publicity may at least remain as one safeguard to the security of the citizen. All the authorities say that instructions of the judge to the grand jury should be in open court.—17 Am. & Eng. Ency Law (2d ed.), pp. 1273, 1292; *State v. Will*, 97 Iowa 58; *U. S. v. Kilpatrick*, 16 Fed. Rep 765; *U. S. v. Burr*, 25 Fed. Cas. No. 14693; *State v. Bowman*, 60 Am. St. Rep. 266; *Clair v. State*, 40 Neb. 534; Thompson and Merriam on Juries, §§ 629-634.

The solicitor has no right to counsel finding of bill. That such action of a prosecuting attorney is improper and is good ground for quashing the indictment, we believe there is no diversity in the authorities. Any other rule would be a radical departure from common law principles not warranted by our statute, and one subject to great abuse. We believe no authority can be found for the proposition that the prosecuting attorney may instruct the jury upon the weight and sufficiency of the evidence, or in any other manner seek to influence or control their findings upon the facts. In this regard the limitations placed upon him are precisely the same as those placed upon the trial judge. Neither must invade the province of the jury.—Code (1896), § 5045; Thompson and Merriam on Juries, §§ 629-634; 17 Am. & Eng. Ency. Law (2d ed.), pp. 1292-3; 10 Ency. Plead. & Prac., p. 398; *State v. Green*, 12 Am. St. Rep., note, p. 914; *Blevins v. State*, 68 Ala. 92; *Clair v. State*, 28 L. R. A. 367, and note; *U. S. v. Kilpatrick*, 16 Fed. Rep. 765; *In re District Attorney*, Fed. Cas. No. 18255; *State v. Aleck*, 41 La. Ann. 83; *Com. v. Bradney*, 126 Pa. St. 199; *Com. v. Frey*, 11 Pa. Co. Ct. R., 523; *State v. Addison*, 2 S. C. 356; *Ex parte Crittenden*, Fed. Cas. No. 3393a; *Miller v. State*, 28 So. Rep. 208; 10 Gen. Dig., 2046; *Bennett v. State*, 62 Ark. 516.

The defendant's plea of *autre fois acquit* was a bar to the prosecution of the present case, and the demurrer thereto should have been overruled. The Constitution of Alabama provides that no person shall, for the same offense, be twice put in jeopardy.

The proper meaning, therefore, of this constitutional provision is that no person shall for the same wrongful or criminal act be twice put in jeopardy of life or limb. Its purpose, we repeat, is to protect the citizen not only from repeated punishments for the same act, but from the harassment and oppression of repeated prosecutions for the same act, or, as said by the Supreme Court of New Jersey, from "the danger of an erroneous conviction from repeated trials."—*State v. Cooper*, 25 Am. Rep. 492. Whatever may be the rule of some jurisdictions or that declared by some cases, the decisions of this court above referred to, supported by many others

from other States, have settled a test which may be
stated thus, namely: If the same identical act enters
into both offenses as a necessary ingredient of each,
a conviction or acquittal of one is a bar to a prosecu-
tion for the other. This is, as we believe, a safe rule,
one well calculated to protect the citizen against op-
pressive prosecutions and at the same time subserve the
deterrent purposes of the administration of the criminal
law. While the ends of private vengeance might be
gratified by repeated prosecutions for the same act,
under the name of different crimes between whose ele-
ments slight differences exist, yet we submit that the
public good does not require that prosecutions for crime
shall degenerate into persecution.

If such were to be allowed, there is no reason why
in the present instance, this defendant might not be
sucessively prosecuted for rape, seduction, carnal knowl-
edge of a girl under 14 years of age, and adultery, all
based upon the same act, because under an indictment
for either there could be no conviction for one of the
others, and because the facts to establish these several
crimes are in each case different. And there was, in-
deed, some evidence tending to show each of these
crimes.—*Johnson v. State,* 12 Ala. 840; *Foster v. State,*
39 Ala. 229; *Moore v. State,* 71 Ala. 397; *Adams v.
State,* 48 Ala. 421; *Tuberville v. State,* 40 Ala. 715;
*Mooney v. State,* 33 Ala. 419; *Hurst v. State,* 86 Ala.
604; *Powell v. State,* 89 Ala. 172; *Stone v. State,* 115
Ala. 121; *O'Brien v. State,* 91 Ala. 25; *Gunter v. State,*
111 Ala. 23; *Gordon v. State,* 71 Ala. 315; *Wilcox v.
State,* 40 Am. Rep. 52; *Fiddler v. State,* 7 Humph.
508; *Hirshfield v. State,* 11 Texas App. 207; *State v.
Cameron,* 3 Heisk. 78; *Clem v. State,* 13 Am. Rep. 369;
*State v. Damon,* 2 Tyler, 387; *State v. Lewis,* 11 Am.
Dec. 741; *Roberts v. State,* 58 Am. Dec. note, p. 539;
*People v. State,* 57 Barb. 46; *State v. Cooper,* 25 Am.
Dec. 490; *State v. Emery,* 54 Am. St. Rep. 878; *State
v. Ingles,* 2 Hayw. 4; *State v. Com.,* 2 Murphy 371;
*State v. Stanly,* 4 Jones 290; *State v. Cross,* 9 Am.
St. Rep. 53; *State v. Colgate,* 47 Am. Rep. 507; *Hinkle
v. Com.,* 4 Dana 518; *Copenhagen v. State,* 15 Ga. 264;

*Holt v. State,* 38 Ga. 187; *Com. v. McIlvain,* 17 Pa. Co. Ct. Rep. 174; s. c. 5 Pa. Dist. Rep. 175.

The defendant's testimony given on the trial under an indictment for rape was an involuntary statement, and for that reason was not admissible on the trial for seduction.

This court may well take judicial knowledge of the fact that at the trial of the rape case it was strenuously argued by the State that defendant was moved by fear of conviction to state falsely that the woman consented. Could any one deny the legitimacy of the argument? Is not such precisely what renders confessions or admissions in criminal cases inadmissible? While we have been able to find no case in this or any other State strictly analogous to this, we refer to the following authorities as illustrative of the unfavorable light in which confessions are regarded by the court and of the rules governing their admission.—1 Greenl. on Ev. (16th ed.), §§ 218-228; 6 Am. & Eng. Ency. Law (2d ed.), pp. 560-568, 526, 529; *Wilson v. State,* 84 Ala. 426; *Wilson v. State,* 110 Ala.1; *Kelly v. State,* 72 Ala. 244; *Redd v. State,* 69 Ala. 255; *Lacey v. State,* 58 Ala. 385; *Ward v. State,* 50 Ala. 120; *Gregg v. State,* 106 Ala. 44; *Bonner v. State,* 55 Ala. 242.

There was no proof of the *corpus delicti.* Defendant's testimony on the rape trial should not have been admitted for another reason, namely, there was no independent proof of the *corpus delicti.* This requirement of the law is met by evidence not merely of the commission of the deed, but also of its criminal character, and some authorities say, of the agency of the defendant. Wharton's Crim. Ev., §§ 324-329; *Pitts v. State,* 43 Miss. 472; 7 Am. & Eng. Ency. Law (2d ed.), 861 and notes; *Winslow v. State,* 76 Ala. 42; *Coalten v. People,* 41 Am. St. Rep. 346; *Harris v. State,* 19 Am. St. Rep. 837; *Matthews v. State,* 55 Ala. 187.

The portions of the court's general charge, to which exceptions were reserved, were erroneous.—*Munkers v. State,* 89 Ala. 94; *Wilson v. State,* 73 Ala. 527; *Cunnigham v. State,* 73 Ala. 51; *Cooper v. State,* 90 Ala. 641.

[Hall v. The State.]

CHAS. G. BROWN, Attorney-General, and JOHN A. LUSK, for the State.—The demurrers to the motions to quash the indictment and the plea in abatement thereto were properly sustained.—*Clair v. State,* 40 Neb. 534; 28 L. R. A. 367; Code, § 5045; *United States v. Terry,* 39 Fed. Rep. 355; 1 Green's History of English People, 167.

The special plea of *autre fois acquit* presented no bar, and the demurrer was correctly sustained. A former acquittal is no bar to a subsequent prosecution, unless the accused could have been convicted upon the first indictment on proof of the facts averred in the second indictment.—1 Mayfield Dig., p. 497, § 120; *Durham v. People,* 39 Am. Dec., 407.

A conviction or acquittal on an indictment for larceny is not a bar to a prosecution for receiving or concealing the stolen goods.—1 Mayfield Dig., pp. 496-7, §§ 114-20.

A conviction or acquittal on an indictment charging burglary is not a bar to an indictment charging larceny growing out of the same act.—1 Mayfield Dig., p. 497, § 132; *Bowen v. State,* 106 Ala. 178.

A plea of former acquittal is good whenever the facts charged in the second indictment would, if proved, have sustained a conviction on the first indictment under which defendant was acquitted.—Note to *Stewart v. State,* 60 Am. St. Rep. 37.

An acquittal for rape is not a bar to a subsequent prosecution for incest predicated on the same act of sexual intercourse.—*Stewart v. State,* 60 Am. St. Rep. 35.

The defendant's testimony upon the trial under an indictment for rape, was admissible in evidence.—*Bibb v. State,* 83 Ala. 84; *Wilson v. State,* 110 Ala. 1.

TYSON, J.—No objection was taken to the organization of the grand jury, in the court below, that preferred the indictment upon which the defendant was convicted. But this is of no consequence, if the illegality of its organization affirmatively appears in the record, since this court would be compelled to take the point

as no valid conviction can be based upon a void indict-
ment.—*Finley v. State*, 61 Ala. 201.  The record dis-
closes that the number drawn to serve on the grand jury
was eighteen.   That only fifteen of this number ap-
peared and that by reason of an excuse allowed by the
court, one other was not required to serve, thus re-
ducing the number to fourteen.   Thus "a contingency
existed in which the court had power and it became a
duty, to complete the jury, by ordering the summons of
a sufficient number of qualified citizens to supply the
deficiency.   In the exercise of this power, the court
could order a summons of only such number as would
increase the jury to fifteen or of such number to in-
crease it to twenty-two or to an intervening number,
as in its discretion was deemed best for the administra-
tion of justice.   Either number would, under the statute,
complete the grand jury when empannelled and sworn,
and the selection of either is not an excess of the power
conferred upon the court.—*Kilgore v. State*, 74 Ala.
1.   The court ordered the summoning of six persons and,
if all had appeared, this would not have increased the
number to twenty-one.   Presumptively only three ap-
peared who were placed upon the jury, making the
grand jury composed of seventeen persons.   There was,
therefore, no necessity, under the terms of the statute,
of having the names of those three persons written on
separate slips of paper, folded, placed in a box and
drawn.—Code, § 5023.   Besides, we cannot affirm that
this was not done.   There is, therefore, no merit in the
contention that the grand jury was illegally organized.

The matter attempted to be set up in the plea of abate-
ment was not proper subject for plea.   There was, there-
fore, no error in sustaining the demurrer to the plea.
Nor can the weight or sufficiency of the evidence upon
which the grand jury acted in finding the indictment be
inquired into.—*Sparrenberger v. The State*, 53 Ala.
481.

It may be doubted whether the overruling of the mo-
tion to quash the indictment upon the grounds relied
upon is revisable by this court—whether it is not a mat-
ter addressed to the discretion of the trial court.—*John-
son v. State*, 133 Ala. 38; *Bryant v. The State*, 79 Ala.

282; Bishop on Crim. Proc (3rd ed.), § 761; *The State v. Dayton,* 3 Zarbriskie (N. J.), 49; *The State v. Baldwin,* 1 Dev. & Bat. (N. Car.) 195; *State v. Rosenburgh,* 7 Wal. 580 and other cases cited in notes 4 and 5 in Bish. Crim. Prac. under section 761. However this may be, we feel sure that there is no merit in any of the grounds of the motion. We entertain no doubt as to the correctness of the rule declared in *Spigener v. The State,* 62 Ala. 383, where this court, speaking through STONE, J., to a motion to quash an indictment or to strike it from the files "because the same was not voted or preferred as a true bill," said: "The statutes require the grand jurors to take an oath that they will keep secret the State's counsel, their fellows and their own.—Code of 1876, section 4755; see, also, sections 4134-5, [§§ 5024-5, Code, 1896]. Indictments, when found, are presented to the court in open session by the grand jury as a body. This is a solemn, official affirmation to the court that the bills then presented, indorsed by the foreman true bills, and signed by him, are the findings of at least twelve of the grand jury. The grand jurors being present, if any bill, so presented, was unauthorized by the requisite finding, the fact should then be made known. The indictment being returned and delivered to the court, is then indorsed by the clerk and filed in his office, and becomes a record of the court.—Code of 1876, sections 4677, 4821, [Code of 1896, §§ 4914 and 4916]. Indictments having these solemn sanctions thrown around them, it is not permissible to receive testimony, either of the grand jurors, or any other person cognizant of the facts, to show how any grand juror, or any number of them, voted on any particular finding. The record cannot be disproved in this way." It would seem as a logical deduction from the principle declared above, that the conduct of the solicitor in the matter of advice to the grand jury and of the presiding judge in giving them special instructions cannot be allowed to impeach the record unless their conduct amounted to a fraud of such sort as would authorize a court to go behind and set aside judgments and decrees. But, independent of this consideration, in view of the imposition

of secrecy laid upon the consciences of the members of the grand jury by their oath and the public policy declared, impliedly, if not expressly, in our statutory system regulating the organization of grand juries; the conducting by them of the inquisitorial examination into all indictable offenses given to them in charge by the court, as well as those brought to their knowledge committed or triable in the county; the secrecy of the finding of the indictment expressly enjoined upon them, the judge, solicitor, clerk and other officers who may know of its finding until after the arrest of defendant; the duty imposed upon every grand juror who knows or has reason to believe that a public offense has been committed to disclose the same to his fellows; and the legislative declaration relieving the juror of the obligation of secrecy, requiring him to disclose, in certain specified cases, the occurrences in the grand jury room, seem to us to establish a rule of public policy in this State, that forbids any member of the grand jury, preferring the indictment, should disclose any fact or facts which entered into the consideration influencing their finding.  Certainly to permit a grand juror to testify that one or more of the jury did not vote for the finding of the bill or indictment or matters influencing the action of members of the jury would be not only a violation of his oath as a grand juror, but would be destructive and subversive of the grand jury as an institution of our judicial system and destructive of that security of freedom of thought and action and, therefore, of that independence so absolutely essential to the faithful discharge of the duties imposed upon that body, which if impaired or destroyed would be fatal to a vigorous administration of the criminal law.—Proffatt on Jury Trial, p. 89; 17 Am. & Eng. Ency. Law (2d ed.), 1295; *The State v. Johnson*, 115 Mo. 480; *Elbin v. Wilson*, 33 Md. 135; *People v. Thompson*, 81 N. W. Rep. (Mich.) 344; *Ex parte Sontag*, 64 Cal. 525.  This latter case cited is very much in point, since the statutes reviewed by the court are very similar to ours.  Our conclusion upon the point under consideration finds support in the decisions of our own court, which hold it to

8c

be against the policy of the law to allow a petit juror to impeach a verdict rendered by a jury of which he was a member.—*City of Eufaula v. Speight*, 121 Ala. 613; *Clay v. The City Council of Montgomery*, 102 Ala. 297. This being undoubtedly the rule as to petit jurors, much more weighty are the considerations for applying and enforcing the same rule as to grand jurors. With the testimony of the two members of the grand jury, who were examined as witnesses, to prove the facts alleged in the motion, eliminated, there is no proof of the facts alleged in it. We might stop here. But if that evidence could be considered, we do not think that it can be affirmed that it establishes the fact to the exclusion of every reasonable doubt that the grand jury were improperly influenced to find the indictment.—*Sparrenberger v. The State, supra.* Nor do we think that it shows any conduct on the part of the judge or the solicitor which would vitiate the indictment. The motion was properly denied.

The next question presented is the action of the court in holding the defendant's plea in bar, of *autre fois acquit,* insufficient. By the averments of that plea it is made to appear that the defendant had been indicted for rape upon the girl whom it is here charged he seduced, and that he was acquitted by a jury after trial upon the merits. It is further averred in the plea that the defendant had only one act of sexual intercourse with the girl and that this act was involved in the charge of rape upon which he was tried and acquitted, and that the same act is involved in the charge of seduction for which he is arraigned in the present case. It is insisted that because this act of sexual intercourse was a necessary ingredient and, therefore, must necessarily be proven in order to sustain both charges, that the acquittal on the charge of rape is a bar to this prosecution. In other words, because this single act is common to both offenses, although each offense necessarily includes other acts entirely different, having no resemblance whatever to each other, that an acquittal of rape is an acquittal of the seduction. To see that the act of sexual intercourse is the only one at all common to both

offenses, we have but to point out that in rape, force, actual or constructive, is necessary, and the character of the female for virtue and chastity, except as bearing upon the question of consent, is utterly immaterial, as is also whether she be a married or an unmarried woman; while in seduction the female must be an unmarried woman, and her consent to the act of sexual intercourse must have been obtained by means of temptation, deception, arts, flattery or a promise of marriage. The rule in this State is that: "A former acquittal is no bar to a subsequent prosecution, unless the accused *could have been* convicted upon the first indictment, upon proof of the facts averred in the second."—*Dominick v. The State,* 40 Ala. 680; *The State v. Standifer,* 5 Port. 523; *Bowen v. The State,* 106 Ala. 178. See also *Stewart v. The State,* 60 Am. St. Rep. 35 and note. We have but to apply this rule to the plea to see its insufficiency and the correctness of the ruling of the court in sustaining the demurrer to it.

The next point pressed upon our attention for consideration is that the testimony given by defendant upon his trial for rape was improperly admitted. The argument made proceeds upon the idea that the confessions or admissions made by him while testifying were not voluntary. That he was on that occasion "flattered by hope" and "tortured by fear" into admitting the fact of the girl's consent to his intercourse with her, one of the necessary constituents of the crime with which he is now charged and being tried, and which, it seems, he succeeded in getting the jury trying him for rape to believe. It is not contended that the rule which applies to the admission of confessions, extra-judicial, requiring the prosecution to show them affirmatively to have been voluntarily made before they are competent, has any application here. The argument is rather, that his confession that the girl consented to his intercourse with her, was made under such circumstances and surroundings as to beget falsehood, rather than truth, and, therefore, being impelled by the desire to be acquitted, his admission of that criminating fact was not voluntary. The answer to all this, it seems to me, is that he was not compelled to testify at all—to make any ad-

missions whatever. And if he testified falsely in order to escape the punishment which the law fixes for the offense of rape, that is a matter for his conscience, but does not address itself, with any degree of consideration, to the conscience of a court. The evidence was not objectionable on this account.—*Seaborn v. The State,* 20 Ala. 15; *Bibb v. The State,* 83 Ala. 84.

The stenographer's report of defendant's testimony taken by him was properly admitted in evidence if the *corpus delicti* was otherwise shown.—1 Greenleaf on Ev. (16th ed.), §§ 439a, 439b, pp. 540, 541, 542, and notes 12 and 17; *Mims v. Sturdivant,* 36 Ala. 630; *Acklin v. Hickman,* 63 Ala. 494.

Was there evidence of the *corpus delicti?* It has been often decided by this court that the *corpus delicti* may be shown by circumstances. It need not be shown by direct proof. There was an admission, made in open court by defendant that he had sexual intercourse with the girl, whom from the evidence had just about arrived at the age of puberty—that critical period when in the process of nature she was budding into womanhood—a period perhaps, when she was more susceptible to the arts of the seducer than any other. Taking into consideration the age of the girl, the relation in which the defendant stood to her—her teacher; his act of selecting her for his special assistance in her studies, his persuasive insinuation that he was her best friend; his fondling her hand; his declaration to her that she could trust him; his promise and pledge, in token of which he gave to her "his right hand," that he would not betray her; her innocence and ignorance of the sexual relation, all of which the evidence tends to establish, there can be little doubt that the question of the proof of the *corpus delicti* was for the jury, and that it was sufficiently established to authorize the admission of defendant's testimony on his trial for rape.

In 2 McClain on Crim. Law it is said: "The exact manner or kind of seductive arts cannot be defined. Every case must depend upon its own peculiar circumstances, together with the conditions in life, advantages, age and intelligence of the parties. So where it ap-

peared that the prosecutrix was of tender years and
under the protection of defendant, it was held that the
circumstances themselves would tend to make out a
case of seduction."

In *Lybarger v. The State,* 2 Wash. 562, it was said:
"The jury heard the testimony, saw the witnesses on
the stand, noted their manner of testifying, listened
to the testimony concerning the age and experience of
the defendant and the tender age and want of experi-
ence of the female; the fact that she was under his roof,
and to a certain extent under his protection; that she
was just merging into womanhood and that she was at
that critical age when judgment is weak and passion
strong and when virtue falls an easy prey to the bland-
ishments of the designing libertine—artifices and
blandishments which, exercised upon a woman of more
mature years, would fall harmless. All these things
the jury had a right to take into consideration."

In *State v. Fitzgerald,* 63 Iowa, 268, the indictment
charged that the defendant seduced the woman named
in it by promising to give her presents if she would al-
low him to have sexual intercourse with her; that de-
fendant told her that there would be no harm in her
having sexual intercourse with him and that the same
was not wrong and could not hurt or injure; the fe-
male being overcome by said false promises and said
false statements and by reason thereof yielded to de-
fendant, etc. etc. The court said: "The defendant de-
murred to the indictment upon the ground that the
facts charged did not constitute seduction and that it
charged two offenses. The demurrer was properly over-
ruled. There is no legal standard by which to de-
termine what false promises, artifices and deception are
sufficient to constitute the crime of seduction. Of
course, mere unlawful commerce for a consideration
paid is not seduction. There must be some artifice or
false promise by which the virtuous female is induced
to surrender her person to the accused. What would
be sufficient to overpower the mind of one woman would
be insufficient to lead away another of more mature
mind and discretion. In this case, the defendant was
a married man of about the age of fifty years and Nellie

Ferree at the time of the alleged seduction was about twelve years old."

In the 8th volume of the American Criminal Law Reports, on pages 706 *et seq.*, is to be found a copious note on the subject of seduction. It is too lengthy to incorporate the whole of it in this opinion. It is there said: "It is for the jury to say whether at the time, the woman was of chaste character, and whether arts were practiced and whether she was lured from the path of virtue and her reluctance to the sexual act overcome by these means. The means used are not material if the arts and persuasions were what caused her to submit. * * The artifice or inducement need not have been concurrent with the act of sexual intercourse. * * To constitute seduction there must have been submission; for if the offense was rape no conviction can be had for seduction. * * But to constitute rape, she must not have yielded at any stage of the act; she must have resisted, persisted in her determination and wish to resist and must have resisted to the utmost, except as she was overcome by fear of dangerous consequences or great bodily harm. * * Even where prosecutrix swears that defendant forced her, her statement is not conclusive upon this question." "Actions speak louder than words" is an old saying and seems to have been illustrated in the conduct of Pearl Pritchett on the occasion of the surrender of her chastity to defendant—inconsistent with her statement that she was forced to commit the act of sexual intercourse. Her act in leaving the school room and going alone to the spot in the woods to which she was directed by defendant to go rather signifies one of two things; either that she did so solely to satiate her own passions or that she was influenced to go for the purpose of having sexual intercourse with defendant after her passions had been aroused by him, by means of some art, deception or temptation practiced by him upon her. In *Suther v. The State,* 118 Ala. 88, the learned judge in the court below in his oral instructions to the jury said: "The seduction must be accomplished by means of temptation, deception, arts or flattery. * * Deception is the act of deceiving, the intentional misleading of another by

falsehood spoken or acted. Temptation is that which tempts to evil; an evil enticement or allurement. Flattery is an effort to influence another by the use of false or excessive praise; *insincere* complimentary language or *conduct*. Arts is the skillful and systematic arrangement or adaptation of means for the attainment of some desired end. The word "seduce" as found in the statute imports not only illicit intercourse, but also a surrender of the woman's chastity." These definitions were approved by this court. And we may add that temptation can be by conduct or act—by suggestions of confidence and secrecy if they are believed by the unmarried woman and she is induced thereby to surrender her chastity, this would be seduction. The arts of the seducer are crafty devices by words or acts or both, which influence the female to yield to sexual intercourse. It is sufficient if the intercourse was the result of the arts, or deception practiced. If her consent to engage in the act is attributable to the influence of the arts or deception practiced and the act follows as the result from the consent thus gained, this would be seduction.

Many exceptions were reserved to portions of the general charge of the court designated in the record by the letters of the alphabet. Many of these are without merit, while others were well taken. We shall only notice the latter. The first of these designated "dd" assumed that any word or act done by defendant for the purpose of enticing the girl to the doing of the sexual act amounted to a temptation. Whether they did or did not was a question for the jury.

"ff" was at least misleading, if not a clear misstatement of the rule. To authorize a jury to accept or reject any part of the evidence depends upon whether they believe it to be true or untrue, and not upon whether they believe the same to be just and right.

"gg" and "jj" was a charge upon the effect of the evidence and, therefore, an invasion of the province of the jury.

"kk" involved a suggestion to the jury, at least, that the judge thought that the act of the defendant in agreeing to work the example was to have Pearl alone with him to dally with her and excite in her evil thoughts,

[Surginer v. The State.]

if it did not go to the extent of a suggestion to the jury that they should find such to have been the fact. A similar fault may be found of "ll" and "mm."

"qq" was misleading perhaps to the prejudice of defendant in not making mention of the girl's testimony, which had some tendencies, if believed by the jury, that were favorable to defendant.

Written charge No. 12 requested by defendant should have been given. It was not misleading is the use of the word "voluntarily" in view of the tendency of some of the evidence that the sexual act was by force.

The other written charges refused to defendant were correctly refused. It will serve no good purpose to point out the vice of each of them. These are apparent when they are read in the light of the evidence and the principles we have declared. Nor was there error in giving the written charges requested by the State.

Reversed and remanded.